UNITED STATES DISTRICT COURT
DISTRICT COURT OF MASSACHUSETTS

C.A. No. 05-11658JLT

| | |
|---|---|
| CHRISTOPHER MANGO,<br><br>Plaintiff (Pro se)<br><br>v.<br><br>PROVINCETOWN POLICE DEPARTMENT, CHIEF SCHUYLER 'TED' MEYER III, OFFICER DAVID DITACHIO, PROVINCTOWN BOARD OF SELECTMEN, MARY JO-AVELLAR, CHAIR PROVINCETOWN TOWN MANAGER KEITH A. BERGMAN, TOWN MANAGER and ATTORNEY GENERAL TOM REILLY,<br><br>Defendants | MEMORANDUM IN SUPPORT OF INDIVIDUAL DEFENDANTS, CHIEF SCHUYLER 'TED' MEYER III, OFFICER DAVID DITACHIO, MARY JO-AVELLAR, AND PROVINCETOWN TOWN MANAGER, KEITH A. BERGMAN'S MOTION TO DISMISS |

I.  INTRODUCTION

By this action, pro se plaintiff Christopher Mango asserts numerous claims against various governmental entities and officials, all arising out of the termination of his at-will employment by the Town of Provincetown ("Town") as a summer, part-time assistant harbormaster—a position he held for approximately three weeks. The plaintiff has asserted various civil rights and tort claims against numerous Town departments and officials, as well as the Massachusetts Attorney General.

This Memorandum is submitted in support of the Motion to Dismiss filed by the individual defendants, the Chief of Police Schuyler "Ted" Meyer III ("Chief Meyer"), Officer David Ditachio ("Officer Ditachio"), Chair of the Board of Selectmen Mary Jo Avellar ("Selectman Avellar"), and Town Manager Keith Bergman ("Town Manager") (collectively

"individual defendants").[1]  The claims against the individual defendants should be dismissed because:  (1) plaintiff has literally failed to state a claim against Selectman Avellar; (2) plaintiff has failed to plead facts that could establish any deliberate indifference underlying the Town's supervision or training policies; (3)  plaintiff has failed to plead any facts that could establish an abuse of process or malicious prosecution; (4) Massachusetts does not recognize a claim for "subordination of perjury," and, in any event, the Complaint does not allege facts that would support a claim that perjury occurred or that the individual defendants suborned same; (5) plaintiff has failed to plead facts to support a defamation claim; (6) plaintiff has failed to establish "extreme and outrageous" conduct in support of his intentional emotional distress claim; (7) plaintiff fails to plead facts that could establish a claim of negligent emotional distress; (8) plaintiff has failed to plead facts that could establish a conspiracy claim; (9) the plaintiff has failed to plead the deprivation of any protected constitutional right; and (10) the individual defendants are entitled to qualified immunity with respect to all claims asserted against them.

II.     STATEMENT OF FACTS AS ALLEGED IN THE COMPLAINT[2]

On June 6, 2003, the plaintiff was hired by the Town of Provincetown ("Town") to be the Assistant Harbormaster.  See Complaint, ¶ 8.  During his second week as Assistant Harbormaster, the plaintiff was asked to report to Chief Meyer's office.  At that time he learned of complaints Chief Meyer had received regarding plaintiff's conduct, including a sexual harassment complaint.  See Complaint, ¶¶ 11, 13.  During the meeting, Chief Meyer asked for the plaintiff's resignation or informed him that he would be terminated.  See Complaint, ¶ 13.  After he was terminated, the plaintiff made a complaint with the Town Manager, to which the

---

[1] Concurrently with this Motion to Dismiss filed by the individual defendants, the Board of Selectmen and Police Department are also filing a motion to dismiss.

[2] The facts recited herein are taken from the averments of the Complaint, and are accepted as true only for purposes of this motion.  See Coyne v. Somerville, 972 F.2d 440 (1st Cir. 1992).

Town Manager never responded.  See Complaint, ¶ 14.  The plaintiff also contacted the Chair of the Board of Selectmen, Selectmen Avellar, but she stated that she could not get involved due to the fact that she was married to a police officer that was involved in the dispute with the plaintiff.  See Complaint, ¶ 18.  After the plaintiff was terminated, Chief Meyer was quoted in the local newspaper, Provincetown Banner, stating that he "had the right to terminate [plaintiff's] employment," and there was a "laundry list" of information.  See Complaint, ¶ 15.  The plaintiff moved from Provincetown after feeling threatened by the police officers, specifically Officer Ditachio.  See Complaint, ¶¶17, 20-21.

   III.   ARGUMENT

   A.  Motion to Dismiss Standard

Under Fed.R.Civ.P. 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief may be granted against the defendant.  A Rule 12(b)(6) motion to dismiss is the usual and proper method of testing the legal sufficiency of a complaint.  Moore's Federal Practice, Vol. 2A, § 12.08, p. 2266 (2nd ed., 1984).  On a motion to dismiss, the reviewing court construes well-pleaded material allegations of complaint as admitted, Walker Process Equip. v. Food Mach. & Chem. Corp., 382 U.S. 172 (1976), and all reasonable inferences are drawn in the plaintiff's favor.  Wagner v. Devine, 122 F.3d 53, 58 n.2 (1st Cir. 1997).  The court is not bound, however, to accept as true conclusions of law or unwarranted deductions of fact.  See Washington Legal Foundation v. Massachusetts Bar Foundation, 993 F.2d 962, 971 (1st Cir. 1993).  Where it appears to that plaintiff is entitled to no relief under any state of facts which could be proved in support of his claims, dismissal is proper.  See Ballou v. General Electric Co., 393 F.2d 398 (1st Cir. 1968).

The pleading rules are "not entirely toothless," Fleming v. Lind-Waldock & Co., 922 F.2d 20, 23 (1st Cir.1990), and the "minimal requirements are not tantamount to nonexistent requirements." Gilbert v. Cambridge, 932 F.2d 51, 62 (1st Cir. 1991). A plaintiff must set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Roth v. United States, 952 F.2d 611, 613 (1st Cir. 1991) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). The plaintiff cannot rely upon "subjective characterizations or unsubstantiated conclusions." Fleming, 922 F.2d at 23. "Empirically unverifiable conclusions, not logically compelled, or at least supported by the stated facts," deserve no deference. United States v. AVX Corp., 962 F.2d 108, 114 n.8 (1st Cir. 1992); Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir. 1989). The deference due the allegations of a complaint does not extend to "self-serving generalities" or "unsubstantiated conclusions." Gilbert, 932 F.2d at 62. "[O]nly when conclusions are supported by the stated facts, that is, when the suggested inference rises to what experience indicates is an acceptable level of probability, [do] 'conclusions' become 'facts' for pleading purposes." Id. Finally, to plead a justiciable case, a plaintiff must allege a "'personal injury fairly traceable to [each] defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" AVX Corp., 962 F.2d at 114 n. 8 (quoting Allen v. Wright, 468 U.S. 737, 751 (1984)).

B. <u>The Plaintiff Has Literally Failed to Establish Any Claims Against Selectman Avellar or the Town Manager</u>

The plaintiff has asserted a litany of claims against the individual defendants all of which will be substantively addressed below. As an initial matter, however, the claims alleged against Selectman Avellar and Town Manager Bergman should be dismissed, because the Complaint literally fails to state any factual basis for liability against them. First, the only fact pled against

4

Selectman Avellar is that she recused herself from any involvement with the plaintiff's complaints centering around the Police Department, Chief Meyer, and Officer Ditachio, because she is married to Officer Duane Steele, the plaintiff's direct supervisor.  See Complaint, ¶ 18.  This sole allegation is insufficient to support any of the elements required to sustain the claims against Selectman Avellar, and all of the claims should be dismissed for literally failing to state a claim.  See Roth, 952 F.2d at 613.

Furthermore, as a matter of law, the conduct attributed in the Complaint to Selectman Avellar was entirely appropriate (indeed, arguably required) under the Massachusetts Conflict of Interest Law.  See G.L. c.268A.  Pursuant to the Conflict of Interest Law, a municipal official is prohibited from acting in a manner:

> which would cause a reasonable person, having knowledge of the relevant circumstances, to conclude that any person can improperly influence or unduly enjoy his favor in the performance of his official duties, or that he is likely to act or fail to act as a result of kinship, rank, position or undue influence of any party or person.

G.L. c.268A, § 23(b)(3).  This statutory provision clearly warranted Selectman Avellar's decision to recuse herself from a dispute in which her husband was involved as the plaintiff's immediate supervisor.

Similarly, the only claim against Town Manager Bergman is that he failed to respond to plaintiff's complaints after his termination.  This sole factual assertion cannot possible support the myriad of tort and civil rights claims asserted against the Town Manager.

Accordingly, all of the claims against these defendants should be summarily dismissed.

C. The Plaintiff Has Failed to Allege Any Facts To Support of a Supervisory Liability Claim Against t any of the Individual Defendants.

The plaintiff has alleged against all of the individual defendants a claim of maintaining a policy for failure to train and deliberate indifference.  This allegation should be dismissed for

5

failure of the plaintiff to plead facts that, if proven, could support a supervisory claim against any of the individual defendants.

The Supreme Court has firmly rejected <u>respondeat superior</u> as a basis for Section 1983 liability of supervisory officials. <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 694 (1978). "The Court has said that the language in Section 1983, 'subjects or causes to be subjected' should not be construed to include vicarious liability." <u>Voutour v. Vitale</u>, 761 F.2d 812, 819 (1st Cir. 1985).

In order for a supervisor to be held individually liable for the alleged misconduct of a subordinate, such misconduct must be "affirmatively linked" to the action or inaction of the supervisor. <u>Rizzo</u> v. <u>Goode</u>, 423 U.S. 362, 371 (1976). In order to find such an affirmative link, the supervisor's conduct or inaction must be shown to amount to deliberate, reckless or callous indifference to the constitutional rights of the plaintiff, and that the supervisor's conduct "in fact caused [plaintiff's] constitutional deprivations." <u>Guierrez-Rodriguez</u> v. <u>Caragena</u>, 882 F.2d 553, 562, 567 (1st Cir. 1989). A supervisory official can be held liable for the behavior of his subordinates only if "the behavior of such subordinate results in a constitutional violation and the supervisor's action or inaction is affirmatively linked to the behavior so that it could be characterized as encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference". <u>Lipsett</u> v. <u>University of Puerto Rico</u>, 864 F.2d 881, 902 (1st Cir. 1988).

In this case, as discussed below, the plaintiff has failed to plead a cognizable claim for any underlying violation of his civil rights. Moreover, for purposes of his supervisory liability claim, the plaintiff does not allege any facts that particular training was lacking within the Police Department or that any particular action or inaction of any individual defendant is "affirmatively linked" to any alleged violation. Rather, at most, plaintiff has alleged facts that demonstrate a

personality conflict within the Police Department/Harbormaster's office and that this conflict was decided in favor of several long-term, permanent police officers, rather than a part-time summer employee, who, by his own admission, began to have problems within days of starting his summer job. As a matter of law, these facts are insufficient to support a supervisory liability claim against any of the individual defendants, and such claims should therefore be dismissed.

D. The Plaintiff Literally Fails to Establish A Claim of Malicious Prosecution

The plaintiff has also alleged against all of the individual defendants a malicious prosecution claim.[3] The common-law elements of a malicious prosecution claim are: (1) the commencement or continuation of a criminal proceeding by the defendant; (2) the termination of the proceeding in the plaintiff's favor; (3) an absence of probable cause for the charge; and (4) actual malice. Neives v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001) (citing Correllas v. Viveiros, 410 Mass. 314, 572 N.E.2d 7, 10 (1991)). In this matter, there is no allegation that any defendant ever initiated criminal (or even civil) process against the plaintiff. Accordingly, the plaintiff has failed to plead the primary element of his claim for malicious prosecution, and that claim should be dismissed.

E. The Plaintiff Has Failed to Plead a Claim of "Subordination of Perjury" Because No Cognizable Claim Exists and Plaintiff Has Failed to Allege Facts to Support Such a Claim.

The plaintiff has asserted a claim for "subordination of perjury" against Chief Meyer, Officer Ditachio, and Selectman Avellar. First, subordination of perjury is a criminal violation (see G.L. c.268, §2), and no Court has ever recognized suborning perjury to be an independent civil cause of action.

---

[3] The plaintiff's abuse of process, selective prosecution, and vindictive prosecution are duplicative of his malicious prosecution claim.

In addition, the plaintiff has failed to allege facts that would support such a claim, even if one existed. Subornation of perjury, of course, involves the inducement of another person to commit perjury—i.e., making false statements, under oath. See G.L. c.268, §1. The plaintiff's Complaint does not contain a single factual averment that suggests that any defendant either made any statements (false or otherwise) under oath or induced others to do so. Thus, even if Massachusetts were to recognize a civil cause of action predicated upon subornation of perjury, the facts alleged by the plaintiff would not support such a claim.

F. The Plaintiff's Defamation Claim Against Chief Meyer Should Be Dismissed For Failure to State a Claim[4]

The plaintiff asserts that Chief Meyer made defamatory remarks to the local paper, Provincetown Banner, when an article was published, quoting the Chief as stating that he "had the right to terminate my employment" and that he had "just a laundry list of information." See Complaint, ¶ 15. Assuming for purposes of this motion that Chief Meyer did make such statements, these statements cannot give rise to a defamation claim, because they are privileged, since Chief Meyer was speaking in his capacity as Police Chief, while performing duties required of the position. See Mulgrew v. City of Taunton, 410 Mass. 631, 635, 797 N.E.2d 381 (1991) ("[s]tatements made by public officials while performing their official duties are conditionally privileged.").

An employer or supervisor has a conditional privilege to disclose arguably defamatory information about an employee "when the publication is reasonably necessary to serve the employer's legitimate interest in the fitness of an employee to perform his or her job." Foley v. Polaroid Corp. 400 Mass. 82, 94-95, 508 N.E.2d 72 (1987). Disclosure of the fact that there were numerous complaints reported to the Police Chief regarding the plaintiff's personal conduct

---

[4] The defamation claims against the other individual defendants should also be dismissed, since plaintiff has failed to attribute any statements (defamatory or otherwise) to these defendants.

8

certainly serves the Town's legitimate interest in retaining honest, competent employees. As such, Chief Meyer's statements were conditionally privileged, negating plaintiff's defamation claim. Compare Mulgrew, 410 Mass. 631, 797 N.E.2d 381 (police chief was privileged in informing city council that plaintiff was unfit for reinstatement due to poor performance and suspicious behavior as a former police officer, because "[t]he public has an interest in having a police force comprised of competent and able individuals," and chief communicated the information to those responsible for police administration).

Additionally, Chief Meyer's alleged statements comprised mere opinion, based upon disclosed facts, which are constitutionally protected and cannot serve as the basis for a defamation action. See King v. Globe Newspaper Co., 400 Mass. 705, 708-09, 512 N.E. 2d 241, 243 (1987). No statement of belief based upon a disclosed factual basis, even if that factual basis proves, false, is actionable. See Fleming v. Benzaquin, 390 Mass. 175, 188, 454 N.E. 2d 95, 104 (1983). Thus, no matter how heated and offensive a statement may be, it is not defamatory unless it contains a false, factual assertion. Statements of "rhetorical hyperbole," particularly if made "in the context of a heated political" question are less likely to be defamatory. Lyons v. Globe Newspaper Co., 415 Mass. 258, 264, 266-67, 612 N.E. 2d 1158, 1163-1164 (1993). Moreover, mere statements of vituperation and verbal abuse cannot reasonably be construed as statements of fact and may not give rise to liability on a defamation theory. Id. at 264, n.6. In this instance, the statements of which the plaintiff complains are, at most, non-actionable opinions that the courts have rejected as the basis for a defamation claim.

Here, Chief Meyer's alleged statement that he had received "information" or complaints regarding the plaintiff's conduct is not disputed—rather, the plaintiff merely claims that the Chief should not have believed these complaints. The Chief's further alleged statement that he

9

had the right to terminate plaintiff's employment based upon these complaints is clearly a non-actionable statement of opinion based upon disclosed fact. Therefore, plaintiff's defamation claim should be dismissed for this additional reason.

Finally, "[w]hen a defendant's statements are privileged, a plaintiff cannot succeed in a defamation suit unless he or she establishes that the defendant knowingly or recklessly published the defamatory statement." Mulgrew, 410 Mass. at 636 (citing Tosti v. Ayik, 386 Mass. 721, 726, (1982)). Statements are reckless if "they were unnecessary, unreasonable, or excessively published … [or] made with knowledge of [their] falsity or with reckless disregard for the truth." Foley, 400 Mass. at 95 (citing Bratt, 392 Mass. at 514). Here, even if the Court accepts the plaintiff's rendition of the facts, the plaintiff admits that prior to his termination he was informed of numerous complaints made against him to Chief Meyer. See Complaint, ¶ 11. Therefore, Chief Meyer's alleged statement that he had received complaints regarding the plaintiff's conduct was clearly not made in reckless disregard of the truth and cannot serve as the basis for a defamation claim.

G. The Plaintiff Has Failed to Plead a Cognizable Claim for Intentional Emotional Distress[5]

    1. Chief Meyer

---

[5] The plaintiff has also alleged a negligent infliction of emotional distress claim against the Town Manager. This claim must be dismissed because such recovery is absolutely barred by the Massachusetts Tort Claims Act, G.L. c.258, §2. Pursuant to the Tort Claims Act, "no such public employee . . . shall be liable for any injury or loss of property or personal injury or death caused by his negligent act or omission while acting within the scope of his office or employment," thereby extending immunity from personal liability to public employees acting or failing to act within the scope of their employment. McNamara v. Honeyman 406 Mass. 43, 46, 546 N.E.2d 139 (1989). Additionally, the plaintiff fails to establish a claim for negligent infliction of emotional distress because he has not pled any physical manifestations of harm. See Sullivan v. Boston Gas Co., 414 Mass. 129, 132, 605 N.E.2d 805 (1993). Furthermore, the plaintiff has not pled facts to support the remaining elements of negligent infliction of emotional distress including, negligence, emotional distress, causation, and that a reasonable person would have suffered emotional distress under the circumstances. See id. Clearly, there is no duty for the Town Manager to respond to every complaint presented to him and therefore, there is no breach of that duty. Moreover, a reasonable person would not view a lack of response as so outrageous to cause distress. Accordingly, the negligent infliction of emotional distress claim against the Town Manager should also be dismissed.

In his Complaint, the plaintiff alleges that Chief Meyer intentionally inflicted emotional distress upon him when Chief Meyer terminated his employment. In order to state a cognizable claim for this tort, the plaintiff must allege conduct that Chief Meyer's conduct "was 'extreme and outrageous,' was 'beyond all possible bounds of decency' and was 'utterly intolerable in a civilized community.'" Vittands v. Sudduth, 49 Mass.App.Ct. 401, 410, 730 N.E.2d 325 (2000) (quoting Conway v. Smerling, 37 Mass.App.Ct. 1, 8 (1994)). In Sietins v. Joseph, 238 F.Supp. 366, 379 (D. Mass. 2003), this Court ruled that police officers did not intentionally inflict emotional distress upon the plaintiff when "they falsely accused him of a crime; deliberately misstated on the criminal complaint application that he was too unreliable to appear in court without being arrested; and had him arrested in front of his wife, child, and neighbors."

In the present case, the Complaint simply alleges that Chief Meyer terminated the plaintiff's at-will employment after receiving complaints regarding plaintiff's conduct. See Complaint, ¶ 13. Not only is such conduct far less severe than the conduct found insufficient to support liability in Sietins, but it was manifestly appropriate for Chief Meyer to address the plaintiff's unbecoming conduct and to take employment action in light of the complaints filed against him in such a short period of employment – three weeks. Clearly, the actions attributed to Chief Meyer do not rise to the level of "extreme and outrageous" conduct, sufficient to maintain a claim for intentional infliction of emotional distress. Therefore, this allegation against Chief Meyer should be dismissed.

    2. Officer Ditachio

The plaintiff has also asserted an intentional emotional distress claim against Officer Ditachio. Specifically, the plaintiff alleges that Officer Ditachio threatened to fight him. See Complaint, ¶ 20. Even accepting this allegation as true, such a threat is insufficient to establish

"extreme and outrageous conduct" as required for an intentional emotional distress claim. See Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466, 681 N.E.2d 1189 (1997) (quoting Foley v. Polaroid Corp., 400 Mass. 82, 99, 508 N.E.2d 72 (1987)) (intentional emotional distress claim may not be maintained based upon "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities."). As noted above, plaintiff has alleged, at most, a personality conflict between the plaintiff and Officer Ditachio, based upon a disagreement regarding the plaintiff's report of a truck on the beach. Accordingly, this claim should be dismissed against Officer Ditachio.

H.  Due Process

   1.  The Plaintiff Did Not Have A Property Interest In His At-Will Employment

The plaintiff has pled a vague "civil rights" claim that must be viewed as a claim that he was terminated from his public employment with due process. As a threshold matter, no defendant other than Chief Meyer was responsible for plaintiff's termination, and the claims against Officer Ditachio and Selectman Avellar should be dismissed for this initial reason. Furthermore, any such claim against Chief Meyer should be dismissed, because plaintiff had no protected property interest in his continued employment with the Town, so as to provide him with any due process rights whatsoever. An essential element of any due process claim (procedural or substantive), under 42 U.S.C. § 1983, is the existence of a right protected under federal law or the United States Constitution. See Parratt v. Taylor, 451 U.S. 527, 536-537 (1981); Martinez v. Colon 54 F.3d 980, 984 (1st Cir.), cert. denied, 116 S. Ct. 515 (1995); Watterson v. Page, 987 F.2d 1, 7 (1st Cir. 1993).

In order to establish a protected property right the plaintiff must demonstrate that he had a "legitimate claim of entitlement" to his continued employment, grounded in state law. Logan

v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982); Chongris v. Board of Appeals of Andover, 811 F.2d 36, 43 (1st Cir. 1987) (property rights, while protected by the federal constitution, "are creatures of state law"); see also Sanderson v. Village of Greenhills, 726 F.2d 284, 286 (6th Cir. 1984). As a general proposition, the greater the discretion a governmental authority has in the conferral of a benefit or discipline, the less likely it becomes that a plaintiff will be found to possess a protected property interest. See, e.g., Madera v. Secretary of the Exec. Office, 418 Mass. 452, 459, 636 N.E.2d 1326, 1330 (1994) (citing Roslindale Motor Sales, Inc. v. Police Comm'r of Boston, 405 Mass. 79, 82-83, 538 N.E.2d 312, 314-15 (1989)).

Only where "the repeated use of explicit mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected" property interest, can a due process right be inferred. See Davila-Lopes v. Zapata, 111 F.3d 192, 196 (1st Cir. 1997) (quoting Hewitt v. Helms, 459 U.S. 460, 471, 103 S.Ct. 864, 871 (1983)). The Davila-Lopes Court indicated that the proper inquiry is, "whether the standards governing the [claimed interest] are so particularized, objective, and defined, and also narrow the [government's] discretion so significantly that [a person in plaintiff's] position could be reasonably confident that he would be" entitled to the privilege asserted.

A property interest in employment can only be created by statutes or contract, and where such an "'independent source' does not supply a property interest, the federal constitution does not offer procedural protections." Kelley v. Action for Boston Community Development, Inc., 419 F. Supp. 511, 518 (D. Mass. 1976). Here, there is no statute or contract upon which the plaintiff may rely to claim a property interest. Thus, the plaintiff had no more than a "unilateral expectation" of continued employment and, therefore, had no due process rights at all.

### 2. Procedural Due Process

To the extent the plaintiff's claims are intended to assert violations of his procedural due process rights,[6] such claims must fail because he has received all of the process to which he is entitled. As discussed above, the plaintiff, as an at-will employee, had no property interest in his employment and was not entitled to due process. Nevertheless, in this case, the plaintiff was, prior to his termination, apprised of the grounds for his termination and afforded an opportunity to respond. See Loudermill v. Cleveland Board of Education, 470 U.S. 532, 546, 105 S.Ct. 1487 (1985) (establishing due process rights afforded to a tenured public employee which include notice of the charges against him and an opportunity to respond). Here, the plaintiff was not tenured and had only been in his part-time, summer position for three weeks. Thus, although he was entitled to no process at all, the plaintiff was actually provided with significant process prior to his termination.

### 3. Substantive Due Process

To the extent the plaintiff's Complaint is intended to assert a substantive due process claim, such claim will also fail, because the plaintiff has not identified the deprivation of a "fundamental right" or conduct so egregious as to shock the conscience. A substantive due process claim, unlike a procedural due process claim, must be based upon an explicit or judicially recognized fundamental constitutional right. Lamoureux v. Haight, 648 F. Supp. 1169, 1175 (D. Mass. 1986). The Supreme Court has observed that the protections of substantive due process "have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity." Albright v. Oliver, 510 U.S. 266, 272, 114 S.Ct.

---

[6] The plaintiff's Complaint is vague, in that it does not specify the actual theory(ies) underlying his claims. Although the Complaint asserts "violation of all Civil and Constitutional Rights" it does not specify whether these apparent due process claims are intended as so-called procedural due process or substantive due process claims. Accordingly, the defendants will address both types of due process claims in their motion.

14

807 (1994); see also Faerber v. City of Newport, 51 F.Supp.2d 115, 123 (D.R.I. 1999). "Such rights include, for example, the Fourth Amendment right to be free from excessive force; the Fourth Amendment right to be free from unreasonable seizures of personal property; the Eighth Amendment right to be free from cruel and unusual punishment; and the judicially recognized substantive constitutional right 'to be free of state intrusions into realms of personal privacy and bodily security through means so brutal, demeaning, and harmful as literally to shock the conscience of a court.'" Lemoureux, 648 F.Supp. at 1175 (citations omitted).

Even if the plaintiff could argue that he had a property interest in his position, he could not demonstrate that such an interest is the type of "fundamental" right protected by the substantive Due Process Clause. See Faerber, 51 F.Supp.2d at 123. In Faerber, the District Court for the District of Rhode Island, relying on the First Circuit's decision in Coyne v. Sommerville, 972 F.2d 440 (1st Cir. 1992) (affirming dismissal of substantive due process claim predicated upon denial of promotion) explicitly held that "the right not to be fired without certain procedures is not a fundamental right that raises issues of substantive due process." 51 F.Supp. at 123 (emphasis added). The Faerber Court went on to note that the plaintiff's "firing may raise procedural due process concerns where the state has mandated a termination process…, but it does not reach the higher threshold of a fundamental right." Id.

If the alleged retaliatory firing of the plaintiff in Faerber and the alleged unlawful denial of promotion to the plaintiff in Coyne did not implicate "fundamental rights" protected under the substantive Due Process Clause, it is clear that the plaintiff's assertions in this case likewise fail to sustain a substantive due process claim.

I. <u>The Plaintiff Fails to Establish a Conspiracy Claim Against the Individual Defendants</u>.

The plaintiff alleges a broad conspiracy claim against all of the individual defendants but fails to support it with any factual averments. On this basis alone the claim should be dismissed. However, to the extent the plaintiff is alleging a conspiracy claim under 42 U.S.C. § 1985(3), this should also be dismissed as a matter of law because he cannot prove any of the elements of such a claim.

"To state a claim under § 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." As demonstrated in Section III (H), *supra*, the plaintiff has failed to satisfy the fourth element, insofar as he has not identified a cognizable liberty or property interest which has been impinged in any way by the defendants. As demonstrated below, the plaintiff's "conspiracy" claim must also fail because: (1) no conspiracy may be shown by and among the Town and its officers, pursuant to the intracorporate immunity doctrine; (2) the plaintiff is not a member of any protected class and cannot demonstrate that any alleged deprivation was motivated by any racial or otherwise class-based invidious discrimination; and (3) the plaintiff has failed to identify any overt act in furtherance of the alleged conspiracy.

    1. <u>Plaintiff's "Conspiracy" claim must fail pursuant to the intracorporate immunity doctrine</u>

The plaintiff's "conspiracy" claim fails because it alleges a conspiracy by and among Town officials only. Pursuant to the intracorporate immunity doctrine, a government entity cannot conspire with itself and its individual members. <u>Wright</u> v. <u>Illinois Dept. of Children &</u>

Family Services, 40 F.3d 1492 (1994) (no conspiracy claim may be maintained against individual administrators of state department); Suttles v. U.S. Postal Service, 927 F.Supp. 990 (S.D. Tex. 1996) (Postal Service could not conspire with itself and individual members of Postal Service and therefore, letter carrier could not maintain civil rights conspiracy claim against Postal Service alleging conspiracy within Postal Service); Turner v. Randolph County, 912 F.Supp. 182 (M.D.N.C. 1995) (§1985 conspiracy count must be dismissed, since all named defendants were agents of county, and county cannot conspire with itself). To the extent that the plaintiff alleges the existence of a conspiracy among the Police Department, Chief Meyer, Officer Ditachio, Selectman Avellar, and the Town Manager no action for such a conspiracy may be maintained pursuant to the intracorporate immunity doctrine. Therefore, the plaintiff's conspiracy claim should be dismissed on this basis alone.

    2. Plaintiff's "Conspiracy" claim must fail because he is not a member of any protected class

Plaintiff's conspiracy claim must also fail because he has failed to assert that any alleged deprivation was motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus," Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798 (1971). If no racial animus is charged, a discriminatory class-based animus must be alleged. "The requirement that this discrimination be 'class-based' is not satisfied by an allegation that there was a conspiracy which affected the interests of a class of persons similarly situated with the plaintiffs. Rather, the complaint must allege facts showing that the defendants conspired against the plaintiffs because of their membership in a class and that the criteria defining the class were invidious." Id. In this instance, the plaintiff has not alleged that he is a member of any protected class. Therefore, the plaintiff's "conspiracy" claim should be dismissed on this basis as well.

      3. Plaintiff's "Conspiracy" claim must fail because he has not identified any "overt act" which may give rise to liability

Plaintiff's "conspiracy" claim also fails because he has not identified any "overt act" by the individual defendants. Any conspiracy claim pursuant to §1985(3) "must identify an overt act" in furtherance of the alleged conspiracy. Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 34 (1st Cir. 1996). Here, the plaintiff only alleges that the Police Department was investigating him and Officer Ditachio was questioning his friends. Complaint, ¶¶ 16-17. Clearly, the investigation into complaints made against the plaintiff, including a sexual harassment complaint, is not an overt act in furtherance of a conspiracy. Therefore, for this final reason, the plaintiff's conspiracy claim, pursuant to § 1985(3), must be dismissed as a matter of law.

J. The Individual Defendants are Entitled to Qualified Immunity

Finally, the individual defendants are entitled to dismissal of all of the claims asserted against them, pursuant to the doctrine of qualified immunity. Pursuant to the doctrine of qualified immunity, public officials are shielded from civil rights claims predicated upon those officials' performance of discretionary functions, "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738 (1982). This inquiry is wholly objective, and the plaintiff must prove that "a reasonable public official could not have believed his actions were lawful in light of clearly established law and the information the official possessed at the time of his allegedly unlawful conduct." McBride v. Taylor, 924 F.2d 386, 389 (1st Cir. 1991).

Qualified immunity is applicable in supervisory liability claims, as well as direct deprivation claims. See Febus-Rodriguez, 14 F.3d at 91-95. It is also applicable to common law tort claims. Lynch v. City of Boston, 989 F.Supp. 275, 286 (D.Mass. 1997) (Keeton, D.J.)

18

("Qualified immunity shields a public official from tort liability for an administrative act if she is engaged in the exercise of a discretionary function, or she is privileged and does not exceed or abuse the privilege.")(citing Restatement (Second) of Torts § 895D(3) (1977)).

None of the factual allegations set forth in the Complaint are sufficient to support a claim that any individual defendant violated any clearly established right of the plaintiff. Indeed, as discussed above, any reasonable officials in the place of the individual defendants would have acted just as they did. For instance, no reasonable selectman would have believed it was inappropriate (let alone a violation of the plaintiff's clearly-established rights) to recuse herself from acting in a matter that involved her husband. Similarly, no reasonable police chief would have believed it was a violation of any constitutional rights to terminate an at-will summer employee (on the job just three weeks) upon receiving numerous complaints regarding that employee's conduct from full-time police officers and members of the public. And no reasonable town manager would have believed it was a violation of any clearly-established constitutional right to decide not to respond to complaints by a terminated part-time employee, who had been the subject himself of complaints by other Town employees.

Therefore, all of the claims against the individual defendants should be dismissed for the additional reason that they are barred by the doctrine of qualified immunity.

IV.   CONCLUSION

      For the foregoing reasons, the individual defendants respectfully requests that all claims against them be dismissed.

DEFENDANTS

By their attorneys,

/s/ Jonathan M. Silverstein
Jonathan M. Silverstein (BBO# 630431)
Sarah N. Turner (BBO# 654195)
Kopelman and Paige, P.C.
  Town Counsel
31 St. James Avenue
Boston, MA  02116
(617) 556-0007

269834/60700/0662